UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KAYHAN BAKHTANI,

          Petitioner,

     v.                                    25-CV-1500-LJV
                                            DECISION & ORDER
TAMMY MARICH et al.,

          Respondents.
_____

      The petitioner, Kayhan Bakhtani, is a native of Afghanistan.  Docket Item 1 at ¶ 1.  Fleeing threats and violence from the Taliban, Bakhtani entered the United States on May 29, 2024.  *See id.* at ¶¶ 25-26.  That same day, he was paroled into the country for two years "while he pursued any immigration relief available to him."  *Id.* at ¶ 28.  His parole therefore was set to expire on May 29, 2026.  *Id.*

      When Bakhtani arrived—presumably on the day of his arrival—the United States Department of Homeland Security ("DHS") initiated removal proceedings against him under section 240 of the INA, 8 U.S.C. § 1229a.  *See* Docket Item 1 at ¶¶ 28, 63; *see also* Docket Item 8-3 at 7 (May 29, 2024, DHS record stating that Bakhtani had been paroled into the country "pending 240 proceedings").  As this Court previously has noted, DHS may choose to pursue removal under section 240 "instead of pursuing expedited removal in the first instance."  *See Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 143 (W.D.N.Y. 2025).  Those removal proceedings are still pending.  Docket Item 1 at ¶¶ 28, 63.  Moreover, on September 18, 2024, Bakhtani pursued "immigration relief available to him," *id.* at ¶ 28, when he filed an application for asylum,

withholding of removal, and protection under the Convention Against Torture, *id.* at ¶ 29.  That application remains pending as well.  *See id.* at ¶ 63.

Bakhtani lived freely in the United States until December 3 of last year when, "without explanation," he was taken into custody by United States Immigration and Customs Enforcement ("ICE"), *id.* at ¶ 32, and his parole was terminated via a letter from ICE, Docket Item 8-3 at 5.[1]  That letter stated that Bakhtani's parole was being terminated because "[n]either urgent humanitarian reasons nor significant public benefit warrant [Bakhtani's] continued parole at this time."  *Id.*  But it was silent about why or how ICE had made that determination.  *See id.*[2]

After he was detained, Bakhtani filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 requesting his immediate release.  Docket Item 1.  In support of that request, Bakhtani cites this Court's prior decision in *Mata Velasquez* and argues that just like the petitioner in *Mata Velasquez*, his parole was terminated unlawfully and his ongoing detention violates his constitutional rights.  *See* Docket Item 11 at 10-13, 24.

In *Mata Velasquez*, this Court addressed a petition concerning the arrest and detention of a noncitizen who, like Bakhtani, was previously admitted to the United States on parole.  There, the petitioner had been paroled into the United States for a two-year period "to pursue his asylum claim."  *See Mata Velasquez*, 794 F. Supp. 3d at 137.  Before that parole period expired, however, he was arrested, detained, and issued a letter terminating his parole without explanation.  *Id.*  And if those similarities to

---

[1] Page numbers in docket citations refer to ECF pagination.

[2] What is more, the respondents' briefing also does not provide any explanation why Bakhtani's parole no longer serves humanitarian reasons or significant public benefit.

Bakhtani's case were not striking enough, the petitioner in *Mata Velasquez* also was in removal proceedings under section 240 that remained pending at the time of his arrest. *See id.* at 142-144 (discussing status of Mata Velasquez's section 240 proceedings). Based on the facts presented in that case, the Court ruled for the petitioner,[3] concluding both that the termination of his parole had "violated his rights under the statute and regulations," *id.* at 146, and that his ongoing detention violated his constitutional due process rights, *id.* at 153.

As to the first conclusion, the Court found that "[t]he government . . . does not have the authority to arrest a noncitizen who has been granted parole without properly terminating that parole . . . or unless there is some other valid reason to arrest him." *Id.* at 145 (citing *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1145-46 (D. Or. 2025)). And to properly terminate parole, the government—acting through an official with the requisite authority—must make that decision on a case-by-case basis in light of "the reasons [that the] individual [noncitizen] received parole." *Id.* at 146 (quoting *Doe v. Noem*, 778 F. Supp. 3d 311, 339 (D. Mass. 2025)).

As to the noncitizen's detention, this Court found that under "the circumstances of th[e] case," *id.* at 148, due process required that the petitioner receive "the opportunity to be heard at a meaningful time and in a meaningful manner" before having parole revoked, *id.* at 146-47 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation and internal quotation marks omitted)). Because there was neither evidence

---

[3] There, in addition to filing a petition for a writ of habeas corpus, the petitioner had moved for a preliminary injunction seeking his release. *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154-55 (W.D.N.Y. 2025). The Court granted his motion for a preliminary injunction and ordered his release. *See id.*

that a government official with sufficient authority had properly terminated the petitioner's parole, *id.* at 146, nor evidence that the petitioner had been given any opportunity to be heard (let alone a meaningful one), *id.* at 153, the Court ordered his immediate release, *id.* at 154-55.

Here, the respondents do not attempt to argue that *Mata Velasquez* does not apply. In fact, the only argument the respondents make to justify Bakhtani's detention is the same one they made in *Mata Velasquez*: that the termination of parole justifies detention. *See* Docket Item 8-1 at 4; *see also Mata Velasquez*, 794 F. Supp. 3d at 144 ("The government . . . says that it has revoked Mata Velasquez's parole and that he therefore remains detained" under section 1225(b) (citation and internal quotation marks omitted)). In light of the striking factual similarities and the same arguments, the questions presented here are the same ones presented in *Mata Velasquez*: whether the government properly terminated Bakhtani's parole and whether it gave him the opportunity to challenge that termination at a meaningful time and in a meaningful manner. And if the government did not, then there is no lawful basis for Bakhtani's ongoing detention.[4]

Based on the record before it, the Court cannot help but reach the same conclusion that it reached in *Mata Velasquez*. First, despite the respondents' assertion that the termination of Bakhtani's parole complied with the applicable regulations, *see*

---

[4] The respondents also argue that this Court's review is precluded by 8 U.S.C. § 1252(a)(2)(B)(ii). Docket Item 8-1 at 5. The Court addressed that very argument in *Mata Velasquez* and concluded that section 1252(a)(2)(B)(ii) did not bar its jurisdiction over claims that challenge the process by which parole was terminated. *See* 794 F. Supp. 3d at 141-42. Because Bakhtani likewise takes issue with the process by which his parole was terminated, the Court again concludes that section 1252(a)(2)(B)(ii) does not bar its review.

Docket Item 8-1 at 4, there is no evidence in the record showing that the decision to terminate Bakhtani's parole was made on a case-by-case basis that "attend[ed] to the reasons" he had received parole.  On the contrary, the letter Bakhtani received summarily says only that his parole was being terminated, repeating the language of the relevant regulation without any analysis.  Docket Item 8-3 at 5 (stating that parole was terminated because "[n]either urgent humanitarian reasons nor significant public benefit warrant [Bakhtani's] continued parole at this time"); *see also* 8 C.F.R. § 212.5(e)(2)(i) (DHS can terminate parole "upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of [certain specified DHS] officials . . . , neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States").  Nowhere in that letter or in any of the respondents' submissions is there "a reasoned explanation or any changed circumstances," *Y-Z-L-H*, 792 F. Supp. 3d at 1146, and the termination of Bakhtani's parole therefore violated his rights under the statute and regulations.[5]

Just as troubling, there is no evidence that Bakhtani was given any opportunity to be heard, let alone a meaningful opportunity.  The letter that revoked his parole is dated the same day as his arrest, Docket Item 8-3 at 5, and Bakhtani says that he was not given any notice before he was arrested, Docket Item 1 at ¶ 1.  Moreover, there is no

---

[5] In addition to the letter terminating his parole dated December 3, 2025, Bakhtani also was sent an automated email on April 11, 2025, stating that his parole had been terminated as a result of the government's decision to revoke parole "for hundreds of thousands of individuals who entered via the CBP One application." Docket Item 11-1 at ¶ 7.  The respondents do not acknowledge this email and argue only that Bakhtani's parole was terminated on December 3, 2025.  *See* Docket Item 8-1 at 2.  Because the problems identified above certainly are not solved by an automated email which does not even appear to be personally addressed to Bakhtani, *see* Docket Item 11-1 at 7, the Court need not and does not consider its effect.

evidence that Bakhtani was given any opportunity to challenge the termination of his parole and his ensuing detention.[6]

Because there is no evidence that Bakhtani's parole was properly terminated, and because his abrupt and continuing detention without notice or a meaningful opportunity to be heard violates his right to due process, there is no lawful basis for Bakhtani's continued detention. And because there is no lawful basis for his detention, this Court joins the numerous district courts that have followed its conclusion in *Mata Velasquez:* that the only proper remedy is immediate release. *See, e.g.*, *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 419-26 (S.D.N.Y. Sept. 12, 2025) (ordering petitioner's release when parole was revoked "without any individualized assessment"); *Benavente v. Raycraft*, 2025 WL 3760755, at *4-8 (W.D. Mich. Dec. 30, 2025) (ordering petitioner's release "subject to any conditions that existed under" her parole when "there [wa]s no indication . . . that any . . . case-by-case determination regarding the revocation of [her] parole was made"); *Orellana v. Francis*, 2025 WL 2402780, at *7 (E.D.N.Y. Aug. 19, 2025) (ordering petitioner's release when government had not made a case-by-case determination to revoke parole or "provide[d] credible, direct evidence

---

[6] In determining the due process required in *Mata Velasquez*, the circumstances considered by the Court included the fact that the petitioner had effectively been "invited" to the country through a specific parole program created for Venezuelans. 794 F. Supp. 3d at 148-49. Bakhtani was not granted parole through such a program, but he says that he was effectively invited into the country through a then-existing program permitting asylum seekers to lawfully request permission to enter via the CBP One app. *See* Docket Item 11 at 10-11. The respondents do not contest that assertion, and given the circumstances unique to Bakhtani—an individual whose sibling worked in Afghanistan on projects tied to the U.S. government, Docket Item 11-1 at ¶ 6, and who even scheduled an appointment through the app to enter the country, *id*. at ¶ 3—it is fair to say that he was also "invited" here.

demonstrating that [the p]etitioner received notice, let alone *adequate* notice" before parole was revoked).

## **CONCLUSION**

Accordingly, for the reasons explained above and in *Mata Velasquez*, Bakhtani's petition, Docket Item 1, is GRANTED.  Within 24 hours of the issuance of this decision and order, Bakhtani must be released.  On or before February 9, 2026, the respondents shall file a status report confirming Bakhtani's release.  The respondents' motion to dismiss, Docket Item 8, is DENIED.[7]

SO ORDERED.

Dated: February 6, 2026
       Buffalo, New York

                                           */s/ Lawrence J. Vilardo*
                                           LAWRENCE J. VILARDO
                                           UNITED STATES DISTRICT JUDGE

---

[7] Because the Court concludes that Bakhtani must be released on the basis of the improper termination of his parole and the violation of his due process rights, the Court need not reach the other arguments raised in his petition.